ISMAEL MIRANDA COLÓN, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, BALDOMERO FREYRE, JUDGE, Respondent.

No. C-62-89.     Decided May 6, 1963.

*Rubén Rodríguez Antongiorgi,* counsel appointed by the Supreme Court to assist petitioner. *Rodolfo Cruz Contreras, Acting Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

The facts of the petition having been clarified in the light of the original record sent up to this Court, the proceeding is reinstated to its reviewing nature as a petition for certiorari,[1] and it will be thus considered for the purpose of determining the propriety of the terms of the sentence imposed in

---

[1] The Solicitor General having been heard on the merits, we deem the writ issued.

this case and deciding whether the doctrine announced in *People* v. *Liceaga*, 36 P.R.R. 403 (1927)—effects of the plea of guilty of ordinary offenses without aggravating circumstances—has been adversely altered by Act No. 295 of 1946 (Sess. Laws, p. 758), as amended by Act No. 176 of 1949 (Sess. Laws, p. 552) and Act No. 117 of June 26, 1961, relative to indeterminate sentences.

We designated Rubén Rodríguez Antongiorgi as attorney for petitioner to render him the professional services necessary in this case. Both parties have presented interesting written memoranda on the questions involved.

Petitioner was charged before the Superior Court, San Juan Part, with the offenses of assault with intent to commit murder, illegal carrying of weapons and possession of prohibited weapons. He pleaded not guilty in all the cases. At a trial on the merits before a court without a jury, the classification of the principal offense was reduced to assault with intent to commit manslaughter at the request of the district attorney. Thereupon defendant, personally and through his attorneys, withdrew the pleas of not guilty and pleaded guilty in each case.

On June 1, 1961, in case G-60-594, attempt to commit manslaughter, he was given an indeterminate sentence of two to five years' imprisonment in the penitentiary at hard labor; in case G-60-593, for carrying weapons, from one to three years' imprisonment in the penitentiary, to be served concurrently with the former; and in case M-60-538, for possession of weapons, a sentence of six months in jail.

On August 7, 1962, while he was serving the first two sentences in the penitentiary, he moved the Superior Court in writing that the terms thereof be modified, invoking the case of *Liceaga, supra,* and the circumstances of (a) his having pleaded guilty, (b) that he had no previous criminal record and that this was his first offense, (c) the failure to establish aggravating circumstances in the commission of

the principal offense, and (d) that his conduct and personal conditions were not investigated prior to pronouncing judgment against him. The district attorney objected to the modification of the sentence alleging that the trial court had no power to do so, since petitioner was at that time "under the jurisdiction of the executive branch." On August 14, 1962 the motion for reconsideration was flatly denied.

The doctrine in the *Liceaga* case to the effect that "where the information shows only an ordinary offense and the defendant pleads guilty and no evidence is introduced showing aggravating circumstances, the imposition of the maximum penalty is not justified," has not been altered fundamentally by subsequent cases. As rightly maintained by petitioner's attorney, the Indeterminate Sentences Act did not alter that doctrine. He states his grounds thus:

"The Indeterminate Sentences Act recognizes and consecrates the principle of judicial discretion for the individualization of the penalty, although imposing on it the duty to fix a minimum sentence. The maximum which may be imposed under the new system continues to be the maximum authorized by law for the specific offense. Thus, the maximum penalty to be imposed not having been modified by law, we believe it was not the legislative intention to alter the legal doctrine laid down by this Court which refers specifically to the maximum penalty which may be imposed and *not to the indetermination of the sentence*.

"We believe that the *raison d'etre* of the rule established by this Hon. Court in *Laureano* and *Liceaga* has not been altered by the Indeterminate Sentences Act.

"There are numerous reasons in support of the doctrine announced in *Laureano* and *Liceaga*. Let us see.

"1. Many courts express the belief that a plea of guilty evinces the readiness of defendant to accept responsibility for his criminal act and a repentant attitude, and this represents an important step toward rehabilitation of the accused. Note, '*The Influence of the Defendant's Plea on Judicial Determination of Sentence*'. 66 Yale L. J. 204, 209 (1956). For this reason many judges admit that a defendant who acknowledges his guilt is

entitled to a lighter sentence. See the interesting questionnaire which the Yale Law Journal sent to the federal district judges.

"2. Many judges in their answers to above questionnaire expressed the belief that a defendant pleading guilty should receive some reduction in the sentence for his contribution, through a plea of guilty, to the efficient and economic administration of justice. Note, *id*. When the defendant pleads guilty, the government is saved the time and money which a trial on the merits entails. Guilty pleas help keep crowded criminal dockets current and enable other defendants pleading not guilty to obtain speedy trials. Note, 33 Cornell L.Q. 408–09 (1948). See, also, Newman, *Pleading Guilty for Considerations, A Study of Bargain Justice*, 46 J. Crim. L., C. & P.S. 780 (1956); Weintraub & Tough, *Lesser Pleas Considered*, 32 J. Crim. L. & C. 506 (1939).

"3. The need for avoiding maximum sentences, from the point of view of the administration of justice, was expressed in the report submitted by the Advisory Council of Judges to the American Law Institute:

'The scale of prison terms is too high. We have a mounting number of prisoners, and the ratio of prisoners to the general population is constantly increasing. It has resulted in a round of overcrowding and need for new institutions, and the trend certainly will be continued unless the means are found to change the sentencing picture. We should look for a pattern of lower rather than higher maximum terms. Our experience today is that we can safely release individuals earlier, particularly if we provide professional help to supervise them on parole.'

"Cited by Rubin, *Sentencing & Correctional Treatment Under the Law Institute's Model Penal Code,* 46 A.B.A. 994, 995 (1960)."

The words of the Declaration of Policy added to the Indeterminate Sentences Act by Act No. 176 of 1949, that that Act permits "the imposition of sentences with a margin of reasonable fluctuation between the lowest possible minimum and the highest possible maximum," do not necessarily point to the minimums and the maximums already fixed by the statute. They rather indicate to the judge that it is the

minimum and the maximum within those fixed by law which in his opinion will permit a reasonable margin of fluctuation, taking into account all the attendant circumstances in each case.

It is correct, as alleged by the Acting Solicitor General, that the higher the maximum, the greater the reduction or bonus for good conduct; however, this rule does not imply that the highest maximum fixed by law should be fixed in all cases.

In this case of assault with intent to commit manslaughter the maximum was fixed at five years' imprisonment in the penitentiary, which is the maximum penalty permitted by the statute. See §§ 50 (1) and 204 of the Penal Code. In view of the special concurring circumstances in this case, we are bound to exercise our discretion in the sense of modifying the indeterminate sentence imposed in case G-60-594, assault with intent to commit manslaughter, reducing the same to a minimum of one year and to a maximum of three years' imprisonment, at hard labor.

This Court acknowledges recognition to attorney Rubén Rodríguez Antongiorgi for his magnificent contribution to the decision of the present appeal, having outdone his ordinary duties in the official defense of his client.